Miller, &c., v. Commonwealth.

* CASE 97—INDICTMENT—DECEMBER 20, 1888.

89  653
112 102

# Miller, &c., v. Commonwealth.

89  653
f135 595

APPEAL FROM LAUREL CIRCUIT COURT.

1. CRIMINAL EVIDENCE—UNCOMMUNICATED THREATS.—Where it is a material inquiry, upon a trial for murder, whether the accused or the deceased began the difficulty, it is competent, upon this issue, to prove threats by the deceased, although they had not been communicated to the accused.

2. EVIDENCE SHOWING ACCUSED ADVISED ABSENT WITNESS NOT TO LEAVE.—Facts having been gotten prominently before the jury which were calculated to induce the suspicion that an absent witness had been improperly induced to absent himself, because he would, if present, testify to facts prejudicial to the defense, the court erred in refusing to permit the father of the absent witness to state that one of the defendants advised his son not to go.

W. O. BRADLEY FOR APPELLANT.

1. The court should have granted a new trial, because the jury found their verdict by lot; and while this court has held in Redmon v. Commonwealth, 82 Ky., 334 (overruling P. & E. R. Co. v. Commonwealth, 80 Ky., 150), that it has no jurisdiction to reverse for such an error, it seems that there should be a reversal for any error prejudicial to the substantial rights of the defendant. (Amendment to section 340 of Civil Code.) ·

2. The court should have allowed the defendant to prove that he had advised the absent witnesses to remain in Kentucky.

3. The uncommunicated threats were admissible in evidence, as they were important for the purpose of determining whether or not the accused acted in self-defense. (Campbell v. People (16 Ill., 17), 61 Am. D., 50; Carroll v. State, 23 Ala., 28; Pitman v. State, 22 Ark., 354; State v. Sloan, 47 Mo., 604; State v. Keen, 50 Id., 357; Roberts v. State, 68 Ala., 156; State v. Turpie, 77 N. C., 473; Wharton's Hom., sec. 695; Horr & Thomp. Self-defense, 487, 521, note 574; Hart, Jr., v. Commonwealth, 8 Ky. Law Rep., 714; Wharton's Crim. Ev., sec. 757; Burns v. State, 49 Ala., 370; People v. Arnold, 15 Cal., 476; People v. Scroggins, 37 Id., 251; People v. Alvitre, 55 Id., 263; People v. Travis, 56 Id., 251; People v. Tampkin, 62 Id., 468; s. c., 24 Am.

---

* This case has only recently been ordered to be reported, and, for that reason, has not been reported sooner.

Rep., 455; Little v. State, 6 Bax., 491; Wiggins v. People, 93 U. S., 465.)

P. W. HARDIN, ATTORNEY-GENERAL, FOR APPELLEE.

Brief not in record.

CHIEF JUSTICE LEWIS DELIVERED THE OPINION OF THE COURT.

Henry Miller and John Bosse having been jointly indicted for the murder of Larkin Bird, and convicted of manslaughter, prosecute this appeal.

It appears the deceased, whose reputation was proved to have been that of a quarrelsome and dangerous man, had, a short time before getting to the place he was killed, drawn his pistol on three men and fired at another. Unless the result of the aimless wandering of a restless drunken man, for he was under the influence of liquor, there is nothing to satisfactorily show why the deceased stopped at the particular place he did, which was about one hundred and fifty yards from the dwelling-house of Bosse. The evidence is, that soon after getting there, he, being alone, commenced to fire his pistol, some of the shots, of which there were three or four, being fired in the air, or at random; one of them, as a witness states, was fired at his own hat, which he threw up for the purpose; another shot struck in the yard of Bosse, and, as his wife stated at the time, came near hitting her. There is also evidence he called the name of Bosse in a disrespectful manner. Immediately after his wife cried out she was near being struck, Bosse went into his house and got two guns and a pistol, and started with them towards the deceased, intending, as he testified, to give one of the guns to his son; but Miller took one

of them, and together they approached the deceased, and when they got near to him, Bosse, as he states, presented his gun and commanded the deceased to lower his pistol, and, it being done, he then lowered his gun also.   Either just before or after Miller and Bosse arrived, about which there is some conflict in the testimony, a man named Williams, who had previously been in company with the deceased, and was also offended at him, appeared and took his pistol from him, and, according to the testimony of Bosse and Miller, snapped it at him; but Williams' horses just at that time becoming frightened, he left the place in pursuit of them, and in a short time thereafter Miller shot and killed the deceased.   No one was at the place when the shot was fired except Bosse, Miller and the deceased, though several witnesses testify they had a clear view of the parties at the time.   The evidence is uncontradicted that the deceased, after the pistol was taken from him, still had a knife, the blade of which was open.   Both Bosse and Miller testify that, when shot, the deceased was approaching Miller with his open knife, held in a threatening position, and making an effort, at the same time, to seize Miller's gun.   They are corroborated by other witnesses as to the deceased having his knife opened and approaching Miller; but one or more witnesses stated the deceased was, at the time he was shot, making no movement or demonstration towards Miller.

Appellant, during the trial, offered to prove, and avowed the witness, if permitted to answer the questions propounded, would state the deceased told him the day before the homicide he intended to kill ap-

pellant, Miller, on sight; but there being no proof
that or any other threat against him by the deceased
was previously communicated to Miller, objection to
the question was sustained, and it was not permitted
to be answered. In the process of forming an opinion,
in the absence of positive and convincing evidence as
to what has been, as well as in conjecturing what will
be, the conduct of a particular person in a given state
of case, the first and most natural inquiry is, what
motive had or has he for doing it? Thus, in deter-
mining, in the absence of eye-witnesses, or when the
evidence is contradictory and uncertain, as to who of
two persons began a conflict resulting in the death of
one of them, it is not only material, but often of vital
importance, to ascertain which one of them, if either,
was actuated by motive of gain or revenge; and it is
often sufficient to discredit the positive testimony of
witnesses to show that a person charged with an of-
fense had no motive for committing it, or a strong
motive for not doing it.

In this case the guilt or innocence of Miller ma-
terially depends upon whether, at the time he shot,
the deceased was advancing upon him with a drawn
knife, and, consequently, whether he had reasonable
grounds to believe, and did believe, he was then in
danger of losing his life or suffering great bodily
harm, or whether he shot wantonly and without legal
excuse. In determining that question of fact, about
which the contradictory testimony of the witnesses
was calculated to create some doubt that might have
been resolved against the accused, it seems to us it
was entirely pertinent to show threats by the deceased

against the accused; for if the former was possessed of a feeling of hatred towards the latter, and had formed a determination to take his life, the inference would be at least reasonable that he was the aggressor.

There is a distinction between the inquiry, whether the slayer of his fellow-man was induced to do the deed by a reasonable apprehension, founded upon threats made by the deceased, communicated and known to him, and the question of fact, whether the one or the other commenced the conflict; for in the latter case the inference the deceased began it may arise from the existence of his hatred and revenge, whether known to the other or not. The competency of such evidence has been expressly recognized by this court in Hart v. Commonwealth, 85 Ky., 77.

One of the witnesses made the following statement, obviously in answer to questions by the Commonwealth's Attorney: "My son was standing near me when the killing took place; he is going on twenty-one years of age; he is in Arkansas; he bought his own ticket to go; he worked under me and another man, and I was employed by the Star Coal Company, of which defendant, Bosse, is a member, and we paid him. He did not go away to keep from being a witness; he had been talking of going away for a year before the killing, and was waiting to make money to go on; he was a witness on the examining trial of this case."

The answers of the witness show that the Commonwealth's Attorney was persistent in his endeavor to show the witness had been, by bribery, or in some

other improper way, induced, by Bosse to leave the State to prevent his giving damaging testimony against himself and Miller; and although the witness protested his son left voluntarily, still the facts that Bosse was a member of the coal company, that Miller was an inmate of his family, and the father of the absent witness was his employe, all being got prominently before the jury, were calculated to induce the suspicion, if not belief, that the witness had been improperly induced to absent himself, because he would, if present, have testified to facts prejudicial to the defense. We, therefore, think the court erred in refusing to permit the witness Hammons to state, as he would have done, that "Bosse advised his son not to go, and that Kentucky was a better State than Arkansas."

For the errors indicated, which, we think, were prejudicial to the substantial rights of the defendants, the judgment as to both of them is reversed, and cause remanded for a new trial.