Hargis v. Commonwealth.

_____

CASE 71.—PROSECUTION BY COMMONWEALTH OF BEACH HARGIS FOR MURDER.—December 1, 1909.

## Hargis v. Commonwealth.

Appeal from Estill Circuit Court.

J. P. Adams, Circuit Judge.

Defendant convicted and appeals.—Affirmed.

1. Judges—Prejudice—Time for Objection.—An objection to the trial judge on the ground of prejudice raises a question of jurisdiction, and, to be available must be made before pleading to an indictment, or moving for bail, or for a continuance, unless the basis of the objection be after discovered facts.

2. Judges—Disqualification—Prejudice.—The statement by the commonwealth's attorney that he had "camped on the trail of" defendant's father, and now proposed to "camp on defendant's trail, and put him where he belonged;" does not show such prejudice as to disqualify him to act as judge, he being subsequently appointed to that office, in the trial of defendant for murder.

Hargis v. Commonwealth.

3. Judges—Disqualification—Statements.—Where a statement by a judge in reference to a case is capable of two constructions, that which is consistent with good faith should be preferred.

4. Judges—Disqualification—Burden of Proof.—The burden of proof is on defendant in a criminal prosecution who alleges that the judge will not give him a fair trial.

5 Criminal Law—Evidence—Judicial Notice.—The court takes judici 1 notice that it would not be unnatural for the commonwealth's attorney to state, on hearing that a homicide of an unusual character had been committed, that he would prosecute the case with all his power.

6. Homicide—Trial—Instructions—Self-Defense.—It was proper to instruct that defendant had no right to kill deceased, unless he believed, and had reasonable grounds to believe, that he was "then and there"in danger of death or great bodily harm, and it appeared to defendant in the exercise of "reasonable judgment" that there was no other safe way to avert the danger.

7. Homicide—Trial—Instructions—Self-Defense.—It is proper for an instruction on self-defense to allow the previous acts of deceased to be considered only in determining whether defendant was in danger at the time of the homicide.

8. Criminal Law—Trial—Refusing Instructions.—Where the subject of self-defense is fully covered by the court's instruction, it is not errror to refuse defendant's request on the same subject.

9. Criminal Law—Appeal—Harmless Error—Instructions.—The refusal of a proper instruction is not available on appeal, where it was less favorable to defendant than the one given by the court on the same subject

10. Criminal Law—Trial—Instructions.—An instruction that the law presumes defendant innocent until his guilt is proved beyond a reasonable doubt, and if on the whole case, or on any material fact necessary to establish his guilt, there is a reasonable doubt of his guilt, they should find him not guilty, could not have been misleading.

11. Criminal Law—Change of Venue—Discretion of Court.—Under Cr. Code Prac. Sec. 281, the change of venue in a criminal prosecution is within the discretion of the court.

12. Criminal Law—Appeals—Review—Discretion of Court—Change of Venue.—As no exception can be taken to an order for a change of venue (Cr. Code Prac. Sec. 281), such order is not subject to review.

13. Homicide—Defenses.—It is no defense to a prosecution for the murder of defendant's father that deceased taught him to

carry a weapon, encouraged him to drink whisky, and to associate with disreputable men.

14. Homicide—Evidence — Self-Defense—Previous    Difficulties.— Where defendant was allowed to show' previous assaults on him by deceased, he cannot complain that the details of such assaults were excluded.

15. Homicide — Evidence — Self-Defense — Uncommunicated Threats.—Though the threats by deceased, made two hours before the homicide, were not communicated to defendant, evidence thereof is admissible to show the state of deceased's mind at the time of the homicide.    ·

16. Homicide—Appeal—Harmless Error.—Under Cr. Code Prac. Sec. 240, directing the reversal of a conviction for error prejudicial to the substantial rights of defendant, a conviction of murder will not be reversed for the exclusion of evidence of previous uncommunicated    threats    by    deceased, where such evidence would only be cumulative of uncontradicted testimony fully showing the state of deceased's mind toward defendant.

17. Contempt—Misconduct of Attorney.—Filing an affidavit by defendant in a criminal prosecution alleging prejudice of the judge, and asking the appointment of a special judge, does not constitute contempt of court by the attorney.

18. Criminal    Law—Appeals—Harmless    Error—Misconduct    of Court.—The error of fining defendant's attorney for contempt in presenting an affidavit of prejudice of  the judge is harmless, where the trial took place a year afterward in another county on a change of venue.

W. O. BRADLEY attorney for appellant.

W. A YOUNG, D. B. REDWINE, J. J. C. BACH, SAM H. KASH and THOS. L. COPE of counsel.

POINTS AND AUTHORITIES.

1.  It was error for the court to refuse to retire from the bench. Givens v. Crawshaw, (55 S. W., 905) 21 Ky. Law Rep., 1619; Massie v. Commonwealth, 93 Ky., 588; Powers v. Commonwealth, 114 Ky., 237; Ky. Journal Pub: Co. v. Gaines (116 S. W., 268) 33 Ky. Law Rep. 402.

2.  It was error for the court to grant a change of venue in ·the case or to preside in any way after the affidavit was filed.

3.  It was the duty of the Court to have given all the law of the case.   Williams v. Commonwealth, 80 Ky., 312; Cook v. Commonwealth, 10 Ky. Law Rep., 222; L. & N. R. R. Co. v. Common-

wealth, 13 Ky. Law Rep., 925; Trimble v. Commonwealth, 78 Ky. 176; Heilman v. Commonwealth, 84 Ky. 457; Buckles v. Commonwealth, 113 Ky. 799.

4. The court erred in failing to define the words "malice aforethought" and "felcniously." Section 673 b.. 2 Vol. Bish. Crim. Law; Ludwig v. Commonwealth, 22 Ky. Law Rep., 1108; Whatton's Homicide, 3rd Ed., page 3; State v. Sims, 71 Mo., 538; Bobb v. State, 12 Tx. App., 491; Richardson v. State, 28 Tx. App., 216; Harrell v. State, 41 Tx. Crim. Rep., 507 (55 S. W., 824); Ewing v. Commonwealth, 111 S. W., 355.

5. On requiring defendant to exercise a reasonable judgment the court erred. He was entitled to act upon the belief based upon reasonable grounds, taking into consideration all the surroundings. Haney v. Commonwealth, 5 Ky. Law Rep. 203; Coffman v. Commonwealth, 10 Bush, 495; Radford v Commonwealth, 9 Ky. Law Rep., 280; Bledsoe v. Commonwealth, 9 Ky Law Rep., 1002; Estep v. Commonwealth, 86 Ky., 39 Adkins v. Commonwealth, 32 S. W., 243; Oakley v. Commonwealth, 10 Ky. Law Rep., 885.

6. The court, in limiting the right of the defendant to shoot, by saying that he could not act up to had some other safe way in which to avert the danger, erred. Coffman v. Commonwealth, 10 Bush, 495; Radford v. Commonwealth, 9 Ky. Law Rep., 380; Kinglesmith v. Commonwealth, 7 Ky. Law Rep., 744.

7. The court erred in the 5th instruction by submitting to the jury what were the material facts necessary to establish guilt.

8. The defendant was entitled to the instruction that he had a right to act if he believed, and had reasonable grounds to believe that he was in immediate danger which reasonably appeared to him, whether or not the danger in fact existed. Rapp v. Commonwealth, 14 B. Mon., 622; Meridith v. Commonwealth, 18 B. Mon., 49; Haney v. Commonwealth, 5 Ky. Law Rep., 205; Holloway v. Commonwealth, 11 Bush, 344; Mundy v. Commonwealth, 81 Ky., 233; Ayers v. Commonwealth, 108 S. W., 320; Adkins v. Commonwealth, 82 S. W., 242; Radford v. Commonwealth, 9 Ky. Law Rep., 380; Bledsoe v. Commonwealth, 9 Ky. Law Rep., 1002; Estep v. Commonwealth, 86 Ky., 39; Amos v. Commonwealth, 16 Ky. Law Rep., 158.

9. It was error in the court to refuse to allow the defendant his mother, and grandmother to prove that defendant at the time of the several assaults by his father, did and said nothing to bring them on and did not resist them, and that his father had taught him to carry weapons and associate with disreputable men and encouraged him to drink whisky.

10. The court erred in refusing to allow the witness, Isom, to state that two hours before the killing, the deceased said he

would kill defendant before night and that he was done with him forever.

11. The court erred in failing to caution the jury that the testimony as to the moral character of the defendant, was incompetent, except in so far as it might or might not affect his credibility and in refusing appellant the right to prove that his moral character was attributed generally to the conduct of his father.

12. The court erred in excluding the testimony of Mrs. Day at page 168 Record, as to the assault by deceased on appellant.

Petition for re-hearing by W. O. BRADLEY and D. B. REDWINE for appellant.

## POINTS AND AUTHORITIES.

1. Section 968 of the Kentucky Statutes does not fix any time when a petition swearing a judge from the bench is to be filed further than, of course, it should be before the trial.

2. The word "trial" refers to a decision on the issues in a case. Bovier's Law Dictionary. Title, "Trial."

3. Under the Statute, defendant could not swear the judge from the bench on the trial of a motion for bail, and having withdrawn his motion for a change of venue before same was passed upon, he cannot be prejudiced thereby. Givens v. Crawshaw, 21 Ky. Law Rep., 1619; the cases of Kentucky Central R. R. Co. v. Kenney, 82 Ky., 154; Bales v. Ferrell, 20 Ky. Law Rep., 1564, referred to by the Court, do not sustain the rule declared by the court.

4. From the time of the decision in Turner v. Commonwealth, 2nd Met., 619, rendered February 20, 1859, up to the decision of German Insurance Co. v. Landrum, 88 Ky., 433, rendered in 1889, a period of thirty years, affidavits drawn in the language of the Statute were universally recognized as proper and no question was made as to a waiver by reason of preliminary motions and the changing of that rule amounts to a changing of the Statute itself.

5. The majority opinion in this case is diametrically opposed to the published opinion of this court in Powers v. Commonwealth, 114 Ky., 241.

6. If the facts stated in the affidavit are such as to prevent an official of personal integrity from presiding, their truth must be assumed. Powers v. Commonwealth, 114 Ky., 241. Or even if the facts in the affidavits do not import intentional unfairness, but if true might create an impression upon the affiant that the judge would be unable to give a fair trial, the judge should retire from the case. Givens v. Crawshaw, 21 Ky. Law Rep., 1619.

Hargis v. Commonwealth.

7.    The majority opinion in this case and in the Powers case canno⁺ both fail to stand.  One or the other is the law.

8.    The judgment should be reversed, even though a fair trial has been given, if the affidavit is sufficient. Kentucky Publishing Co. v. Gaines, 110 S. W., 268 (33 Ky. Law Rep., 402.

9.    The witness Isom, who was not allowed to testify, was not corroborated by three witnesses, but only one aside from defendant.  It was error to refuse the testimony of Mrs. Day, showing a threat to kill the defendant.  This Court cannot speculate on the effect of testimony.  Coppage v. Commonwealth, 3 Bush, 532; Kenned v. Commonwealth, 14 Bush, 361.

10.    Although preliminary motions were made, they can constitute no waiver if not passed on by the Court.  Givens v. Crawshaw, supra.

JAMES BREATHITT, Attorney General, T. B. BLAKEY, Assistant Attorney General, for Commonwealth.

The Commonwealth in its brief in this case makes the following points and cites the following authorities:

1.    The motion and affidavit requiring judge to vacate the bench insufficient in this case.  Ky. Journal Pub. Co. v. Gaines, 33 Ky. Law Rep., 404; German Insurance Co. v. Landram, 88 Ky., 433; Turner v. Commonwealth, 2 Met., 625; Ky. Stat., Sec. 968; Massie v. Commonwealth, 93 Ky., 590; Givens v. Crawshaw, 21 K. L. R., 1618; Powers v. Commonwealth, 24 Ky. Law Rep., 1007; Wathen, Mueller & Co. v. Commonwealth, 116 S. W., 236; Schmidt v. Mitchell, 101 Ky., 592; Smith v. Commonwealth, 108 Ky., 53; Hargis v. Marsum, 31 Ky. Law Rep., 795; Sparks v. Colson, 22 Ky. Law Rep., 1369; Vance v. Fields, 11 Ky. Law Rep., 388.

2.    There was no error in granting the change of venue on petition of the commonwealth.  Commonwealth ex rel., Atty. Gen., &c., v. Cowans, 125 Ky., 821, and cases cited.

3.    The venire was properly summoned from Madison county. Section 194 Criminal Code; Brafford v. Commonwealth, 13 Ky. Law Rep., ——; Roberts v. Commonwealth, 94 Ky., 504; Mosely v. Commonwealth, 27 Ky. Law Rep., 214.

4.    Exceptions to testimony by Commonwealth properly sustained.  White v. Commonwealth, 31 Ky. Law Rep., 271.

5.    It was not error to permit an employed attorney to read the indictment and state the case.  Sections 219 and 220 Criminal Code; Roberts v. Commonwealth, 94 Ky., 499.

6.    The instructions in this case fairly present the law. Ludwig v. Commonwealth, 22 Ky. Law Rep., 1108; Ewing v. Commonwealth, 111 S. W., 355; Robertson's Ky., Criminal Law & Procedure, 221; Rush v. Commonwealth, 78 Ky., 268; Jolly v. Common-

wealth, 22 Ky. Law Rep., 1622; Stout v. Commonwealth, 123 Ky., 184, and cases cited; Brooks v. Commonwealth, 16 Ky. Law Rep., 265; Williams v. Commonwealth, 25 Ky. Law Rep., 1504; Stephens v. Commonwealth, 20 Ky. Law Rep., 545; Pennington v. Commonwealth, 24 Ky. Law Rep., 321; Austin v. Commonwealth, 19 Ky. Law Rep., 477; Sparks v. Commonwealth, 3 Bush, 117.

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

Beach Hargis shot and killed his father, James Hargis. He was indicted for murder, and on a trial before a jury was found guilty as charged; his punishment being fixed at confinement in the penitentiary for life. The court entered judgment on the verdict, and he appeals.

The first question arising on the appeal is in regard to the refusal of the regular circuit judge to vacate the bench. The affidavit filed by the defendant in support of his motion that the regular judge should retire from the bench, and that a special judge should be appointed, is as follows: "The defendant and affiant, Beach Hargis, states that the judge of this court, Hon. James P. Adams, will not afford him a fair and impartial trial, and will not impartially decide an application for a change of venue in this case, and that said judge is and has been a bitter partisan Republican and has an unkind and prejudicial feeling against the defendant and all the family of the Hargises. He says: That for a number of years preceding this time there existed in this county a deadly enmity and feud between the Hargis family and its friends, he and his father being among the number, and others of the opposing political party, and those whose tendencies and sympathy was with them, he and his father and the Hargis family being Democrats, and those opposing them being Republicans, or persons who sympathized with them. That many in-

dictments were found against his father and others and many trials had, and that at the time of his father's death that enmity and unfriendliness existed. That the Hargises were charged with being responsible for the death of various persons, and a number of said indictments were found against them, charging them with conspiracy in the murder of a number of persons who had been killed.

He says: That the Hargises, especially his father and himself, to the best of his ability, were active Democrats and active workers for that party at the polls. That during the time aforesaid the said Judge Adams was a candidate for commonwealth's attorney, and he and his father actively worked against him. That said Adams being defeated in his race, on the face of the returns, instituted a contest which was very bitter, and in which his father and others were charged with partisanship and illegal conduct. That after this the judicial district was changed by legislative act, and said Adams, having won his contest, became the commonwealth's attorney in the district as it is at present constituted, and prosecuted the Hargises, his father among others, with great activity and bitterness. That whilst. said Adams was acting as commonwealth's attorney, Judge Riddell, the circuit judge of this district died. Whereupon the said Adams was appointed judge by the acting Governor in this district. He states that at the time he killed his father said Adams was commonwealth's attorney in this district, and he has discovered, for the first time since the adjournment of the last term of this court, expressed himself with great bitterness against this defendant, saying that he had 'camped upon his father's trail,' and now he proposed to 'camp upon

this defendant's trail and put him where he belonged.'
He says that after his trial for bail said Adams said
that he would never allow any man bail who had killed
his father.   For the foregoing reasons, he asks that
the said Adams retire from the trial of the case, and
another judge be selected or appointed as the case
may be, under the statutes.''

The indictment was returned on February 18, 1908.
At that term the defendant demurred to the indict-
ment.   His demurrer was overruled, and he excepted.
The trial was set for the thirteenth day of the term.
On that day he filed affidavits for a continuance, and
later he filed his petition and motion for a change of·
venue in the action.   Before the proof was heard on
the motion for a change of venue, he withdrew the
motion.   The case was continued for the term, and at
the special term in August he filed the affidavit above
quoted to remove the regular circuit judge from the
bench.   In the meantime he had made a motion for
bail, and this had been heard and overruled by the
circuit judge.

The rule is that an objection to the trial judge
raises in effect a question of jurisdiction, and the ob-
jection, to be available, must be made before an ap-
pearance to the merits of the action or the submission
of preliminary motions by either party preparatory to
a trial.   Kentucky Central R. R. Co. v. Kenney, 82
Ky. 154, 6 R. 17; German Insurance Co. v. Landram,
88 Ky. 433, 11 S. W. 367, 592, 10 Ky. Law Rep. 1039;
Vance v. Field, 89 Ky. 178, 12 S. W. 190, 11 Ky. Law.
Rep. 388; Russell v. Russell, 12 S. W. 709, 11 Ky. Law
Rep. 547; Bales v. Ferrell, 20 Ky. Law Rep. 1564, 49
S. W. 759.   There is nothing in any of the later cases
in conflict with the rule laid down in these cases.   It
is held, however, in all the cases, that matters which

have been since discovered may be set up by affidavit. Vance v. Field, 89 Ky. 178, 12 S. W. 190, 11 Ky. Law Rep. 388. The whole of the affidavit above quoted, except the last paragraph, refers to matters which the defendant knew at the preceding term when he entered his general demurrer to the indictment, when he filed his application for a change of venue, and when he made a motion for bail. If, in a criminal case, the defendant were allowed thus to experiment with the circuit judge, and at a succeeding term to swear him from the bench because his experiments had not turned out as he would like them, the door would be open for a practice well calculated to bring the administration of criminal law into disrepute. The rule is a sound one which requires the defendant to make his objection promptly to the circuit judge, and which precludes him from making an objection where he elects to proceed with the case before him without objection. The only part of the affidavit therefore which it is necessary for us to consider is the last paragraph.

The statement attributed to the circuit judge, was made when he was commonwealth's attorney in the district, and when he was not circuit judge, and had no reason to anticipate that he would be. He was speaking as commonwealth's attorney. When he declared that "he had camped upon his father's trail and now proposed to camp upon the defendant's trail and put him where he belonged," he was simply expressing what he would do as commonwealth's attorney. The law made it his duty as commonwealth's attorney to prosecute all infractions of law occurring in his district. It made it his duty to camp upon the trail of all those who were charged with committing

felonies, and to put them where they belonged. The words do not necessarily import any personal hostility to the defendant. On the other hand, taking this whole paragraph together, it would simply indicate that the officer had in mind the performance of the duties which the law imposed upon him.

The office of circuit judge is one of great dignity and responsibility. Perhaps the peace and good order of the district more largely depends upon him than any other one person. The people of the district should not be deprived of the services of the regular judge for trivial causes, or on account of declarations made by him which do not necessarily show such a state of mind as would make him unfit to hold the court for the occasion. If what he says is capable of two constructions, then that which is consistent with his good faith should be preferred. The burden is on the defendant to show facts manifesting that the circuit judge will not grant him a fair trial, and he does not do this when he attributes to the circuit judge a statement which may as naturally be construed innocent as otherwise. It does not appear from the affidavit that, while he was commonwealth's attorney, the circuit judge had taken any part in the prosecution. No facts are stated in regard to this.

The only thing alleged is the declaration as commonwealth's attorney as to what he would do. The court must take judicial knowledge that the commonwealth's attorney travels around the circuit with the judge, and that, when he would hear at some point on the circuit that a homicide had been committed, it would not be unnatural that he should say where the facts were, as in this case, unusual, that he would prosecute the case with all his power. We do not

think that a declaration by a commonwealth's attorney, when informed that a crime had been committed, that he would prosecute the case as best he could, should disqualify him from thereafter acting as circuit judge, nothing more appearing, for this is nothing more than he should be expected to do; and to say that his declaration that he intended to do what he would naturally be expected to do, it was his duty to do and what disqualifies him from acting as circuit judge, would be in effect to say that the commonwealth's attorney, if afterwards appointed circuit judge, could not properly preside on the trial of any crime which was charged to have been committed in his district while he was commonwealth's attorney.

The proof for the commonwealth on the trial showed in brief these facts: On the night before the homicide, Beach Hargis had gone to his father's store and asked one of the clerks to let him have a pistol. The clerk declined to give him a pistol out of the stock, but told him that his father's pistol was there in the drawer of his desk, and he could take that. The defendant got the pistol, but said nothing to his father, although he was then in the store. The next morning between 9 and 10 o'clock, the defendant was sitting in a barber shop. His face was swollen. He told the barber his father had hit him in the mouth and hurt him there. A man who looked like his father then passed by. He raised up in the chair, threw his hand back, and said, "I thought that was the old man." About an hour later he drank a bottle of Brown's Bitters, and said to a bystander, "Did you hear about the old man mashing my mouth?" and added that it was hard to take. Some two hours later, he appeared at a drug store kept by his brother-in-law, Dr. Hogg. There he drew out his pistol, and

was waving it about, pointing it in the direction of a bystander and his brother-in-law. From this drug store, after a few minutes, he went to his father's store. It was a double store-room. His father was in one room, and he entered the other and took a seat in a chair not far from the front door.

While he was sitting there in the chair, a man in the other room asked his father where he was. His father pointed him out to the man, and said: "There he sits. I have done all I can for him, and I cannot go about him or have anything to do with him." A few minutes later his father said to another man who was in the room: "I don't know what to do with Beach. He has got to be a perfect vagabond, and he is destroying my business, and if Dr. Hogg lets him stay there he will ruin his business." After saying this to the man, the father walked in the direction of where the defendant was sitting. There were a number of persons in the store. As his father approached, the defendant got out of his chair and walked around behind a spool case that was sitting on the end of the counter. No words were spoken. The first sound that anybody heard was the report of a pistol. His father was then about three feet from him. A struggle ensued between them, during which the pistol was shot four times more; all five of the shots taking effect in the father. Persons in the store ran up, and when they got to them the father had the son down and had the pistol, which he handed to one of them, saying, "He has shot me all to pieces." The father died in a few minutes.

The proof for the son was, in substance, that the father came up to him, struck him in the face, and began choking him. When he felt his eyes bulging out, he drew his pistol and shot him, and, his father

continuing to choke him, he fired the other four shots in the struggle; the last two being fired from the floor. The proof for the defendant also showed that the father was drinking. Taking all the evidence, we think it is reasonably clear that the father was unarmed, and that he was shot by the son while he was approaching him, and before he had touched him. Two witnesses who were on the outside of the store were looking through the window, and their testimony, as well as the testimony of the persons in the store, confirms this conclusion. We think it also reasonably clear from the evidence that the son was maudlin drunk, and but for this the unfortunate homicide would not have occurred. He showed that he was under the impression that his father had left the store, and that he went there to meet an uncle, but expecting no difficulty. He also showed: That about a week before his father had beat him unmercifully with a ramrod, that previous to this he had whipped him with a rope, and on the last occasion had struck him in the mouth with his fist, and had got upon him on the floor and churned his head against the floor; that he had taken his pistol from him, and had threatened to shoot him with it, but had been prevented from doing this by the interference of a bystander; and that he had then declared that he would kill him. There was also evidence that the son had said that the old man had beaten him up; but he would never get the chance to do it again; also that he had declared, when his father had taken a pistol away from him when drunk, that every time he got drunk and was having a good time they had to do something to him, and that he aimed to kill his father and certain other persons whom he named.

The court gave the jury instructions aptly submitting to them the law of murder and manslaughter. The instruction on self-defense is in these words: "Although the jury may believe from the evidence beyond a reasonable doubt that the defendant, Beach Hargis, shot and killed James Hargis with a pistol loaded with powder and leaden ball as defined by the first or second instruction, still if they further believe from the evidence that at the time he did said shooting and killing, if he did do it, he believed, and had reasonable ground to believe, that he was then and there in immediate danger of death or great bodily harm then about to be inflicted on him, or which reasonably appeared to the defendant about to be inflicted on him, by the said James Hargis, and there appeared to the defendant in the exercise of a reasonable judgment no other safe way to avert the danger or to the defendant apparent danger, if any, but to shoot and kill said James Hargis, then, in that event, they will find the defendant not guilty on the ground of self-defense or apparent necessity."

We see no objection to the instruction. The court properly used the words "then and there." The defendant had no right to kill his father unless he was then and there in danger. What had taken place before was only to be considered by the jury in determining whether he was then in danger. What his father had previously done would throw light on this question; but it was not competent for any other purpose, for the defendant had no right to kill his father if he was not at the time in danger. A man may not take life unless it was necessary, or apparently necessary, for him to do so. The court did not err in using the words "a reasonable judgment." The defendant cannot be excused for killing another if he acted upon

grounds not reasonably sufficient to warrant a man in so doing. There is nothing in the instruction about retreat. The defendant is not excused for killing another unless in case of necessity, and this is all that the instruction requires. The instruction given contained the whole law, of the case on self-defense, and the court did not err in refusing to give the instruction which the defendant asked. The defendant was in no wise prejudiced by the failure of the court to define the words "malice afore-thought" and "feloniously." If these words had been defined according to the approved definitions, the instructions as a whole would have been less favorable to the defendant than they were as given by the court. The fifth instruction could not possibly have mis-led the jury. The court had told the jury what facts were necessary to constitute the defendant's guilt, and when he told them, in instruction 5, that the law presumed him innocent until his guilt was proved beyond a reasonable doubt, and if upon the whole case, or upon any material fact necessary to establish his guilt, they had a reasonable doubt of his having been proved guilty, they should find him not guilty, the jury could not have misunderstood the instruction.

We find no error of the court in sending the case to Estill county on the changing of the venue. The circuit court has a wide discretion in matters of this sort, and this court will not interfere where the discretion has not been abused. The trial was had in the county of Estill, and a large part of the jury was brought from Madison county. The case had been tried once before, and the circuit judge finds as a fact that he could not obtain a jury in Estill county after having made a fair effort in good faith to obtain a

vol. 135—38

qualified jury free from bias, by reason, among other things, of the wide circulation given the facts of the case. Matters of this sort are by section 281 of the Criminal Code of Practice committed to the discretion of the circuit judge, and, as by that section no exception can be taken to his ruling, it is not subject to review here. Howard v. Commonwealth, 118 Ky. 1, 80 S. W. 211, 81 S. W. 704, 25 Ky. Law Rep. 2213, 26 Ky. Law Rep. 363.

The defendant offered to prove by his grandmother and others that his father had taught him to carry a weapon, encouraged him to drink whisky, and had caused him to associate with disreputable men, thus rearing him in a manner calculated to bring about the result which followed. The court properly excluded this evidence. It is no defense for the defendant when he kills another that his father reared him badly, and it is immaterial that the person killed was his father. The enforcement of the laws of the commonwealth which the defendant violated are in no manner affected by the way he was reared. The court allowed proof to be made of the previous assaults by the father upon the son. The defendant complains that the court did not allow him to prove the particulars of these assaults as fully as he should have done. The court, however, seems to have followed substantially the rule laid down by this court in White v. Commonwealth, 125 Ky. 699, 102 S. W. 298, 1199, 31 Ky. Law Rep. 271, 720. In that case the court said: "We do not mean to say that it would have been proper for the court to have allowed evidence as to all the details of the cutting and wounding of appellant by Layne, or of the assault made upon him by the latter with a club; but the fact that both assaults occurred, the general character of the injuries re-

ceived by appellant at the hands of Layne, and the further fact that the latter was the attacking party, should have gone to the jury in evidence.'' The evidence which the court admitted got before the jury fairly and fully the assaults made by the father on the son in the previous difficulties, and showed clearly that the father had treated the son in a most inexcusable manner.

The defendant complains that he was not allowed to prove by the witness James Isom that about two hours before the killing he met James Hargis, and he then said to him that he would kill the defendant before night, and that he was done with him forever. The witness had not communicated this threat to Beach Hargis; but, although it had not been communicated to the defendant, it was competent to show the frame of mind of James Hargis at the time. Miller v. Commonwealth, 89 Ky. 653, 10 S. W. 137, 10 Ky. Law Rep. 672; Young v. Commonwealth, 29 S. W. 334, 17 Ky. Law Rep. 18. The evidence should have been admitted. This was error. We find no other substantial error in the admission of evidence in the record. So the question arises: Should a judgment be reversed and a new trial granted for this error? The defendant showed by several witnesses, who were entirely uncontradicted or impeached, that his father a week before had pointed a pistol at him and threatened to kill him, and the conduct of the father at that time was clearly shown. If the evidence of Isom had been admitted, it would only have served to corroborate these three uncontradicted witnesses, and the proof as to the conduct of the father on those occasions was such that we are satisfied the testimony of Isom would really have added nothing to an understanding of the case by the jury. The fact that the

deceased may have made a threat beforehand is simply evidence to show the condition of his mind at the time of the homicide. In addition to the witnesses who testified as to the previous declarations of the father and his previous acts, there were two witnesses to the declarations made by him just before he walked to where the defendant was. The fact is, the defendant had his father's pistol. The father was unarmed. The shooting was done before a word was spoken, and when the father was at least three feet from the defendant. The storeroom had a number of people in it, and it is hard to believe that the defendant, if he had been sober, could have thought that he was then and there in danger of death or great bodily harm at the hands of the father.

Section 340 of the Criminal Code of Practice originally read as follows: "A judgment of conviction shall be reversed for any error of law appearing on the record." Under this provision many criminal cases were reversed by this court, and so, the better to promote the administration of justice, the Legislature added to the section these words: "When upon consideration of the whole case the court is satisfied that the substantial rights of the defendant have been prejudiced thereby." The plain purpose of the amendment was to provide that a judgment of conviction should not be reversed unless upon consideration of the whole case the court was satisfied that the substantial rights of the defendant had been prejudiced by the error complained of. This had been the rule for a long time under the Civil Code, and the purpose of the amendment was to make the rule in criminal cases practically the same as in civil cases. Under the former provision, the court was required to reverse when it found an error in the record. It was

not allowed to speculate as to what was the effect of the error. The amendment was aimed to change this rule and to provide that no case shall be reversed where the defendant has had substantially a fair trial of the merits of his case. We have in a number of cases so construed the amendment. Rutherford v. Commonwealth, 78 Ky. 639, 1 R. 410; Whiteneck v. Commonwealth, 55 S. W. 916, 56 S. W. 3, 21 Ky. Law Rep. 1625; Bailey v. Commonwealth, 58 S. W. 425, 22 Ky. Law Rep. 512; Ward v. Commonwealth, 91 S. W. 700, 29 Ky. Law Rep. 62; Stacy v. Commonwealth, 97 S. W. 39, 29 Ky. Law Rep. 1242.

In Collett v. Commonwealth, 121 S. W. 426, where, as here, there had been an error in the admission of evidence, this court, affirming the judgment, said: "The jurisdiction of this court in criminal cases is wholly statutory. We have only such jurisdiction as the law confers. One of the limitations upon our jurisdiction is that a judgment of conviction shall not be reversed for an error of law appearing in the record, unless, upon a consideration of the whole case, the court is satisfied that the substantial rights of the defendant have been prejudiced thereby." In this case, as in that, the defendant relied in substance solely on the plea of self-defense. The right of self-defense was clearly presented to the jury by the instruction which the court gave. The admission of this uncommunicated threat would not have served in any wise to show that the defendant believed that he was in danger at the hands of his father at the time he shot him, for it was unknown to him. It could only have illustrated his father's state of mind and served to show the purpose for which he approached him; but, in view of the great mass of evidence heard

on the trial as to what had occurred before and what had occurred then, it is manifest that this evidence, if admitted, would have been only cumulative, and could have had no controlling effect upon the trial. On the whole case, we are satisfied from the record that the defendant has had substantially a fair trial on the merits of his case. To reverse the judgment for this error would be to overlook the amendment of the Code, and to follow the old rule which the amendment was designed to abolish.

When the defendant filed his affidavit asking that the circuit judge vacate the bench, the court fined the attorneys for contempt of court in filing the affidavit. This was error. The defendant was on trial, and he had a right to determine whether he was willing to try the case before the regular circuit judge or not. He had a right to require his attorneys to file the affidavit. If the affidavit was false, the proper way to punish it was by an indictment for perjury. An affidavit that the regular circuit judge will not afford the defendant a fair trial would, but for the statute, be necessarily a contempt of court, and, if the attorneys may be fined for filing such an affidavit in one case, they may be fined in all cases, and the statute allowing the affidavit to be filed amounts to nothing. We therefore think that it cannot be a contempt of court under the statute to exercise the statutory right; but the defendant was not prejudiced by this on the trial, for the reason that it all took place in Breathitt county before the venue was changed, and it could have had no effect on the trial before a jury in Estill county a year afterwards.

Judgement affirmed.

BARKER, J. (dissenting).   I am unable to concur in the opinion of the majority of the court in this case. I think the affidavit filed by the defendant, that he could not obtain a fair and impartial trial before the presiding judge, was more than sufficient, and the judge should have vacated the bench and allowed a special judge to be appointed to try the case.   The opinion sets forth the affidavit of the defendant in full, and, without recopying it here, I deem it sufficient to refer to it in the opinion.

The affidavit shows that, at the time the homicide for which the defendant was being tried was committed, the presiding judge, Hon. James P. Adams, was commonwealth's attorney in the district where it took place.   As soon as the killing occurred, the duty of the commonwealth's attorney with reference to the prosecution began.   It was his duty as soon as the homicide was committed to take charge of the case in so far as that was possible or practicable, and to do everything that was necessary, if he thought a crime had been committed, to prosecute the criminal.   After the defendant had killed his father, the affidavit shows —and it must be taken as true—that the then commonwealth's attorney said of the defendant "I have camped upon his father's trail and now I propose to camp upon the defendant's trail and put him where he belongs."

The commonwealth's attorney, in his mind, began the prosecution of the defendant when he made this speech.   It was a declaration upon his part that he then took charge of the prosecution and intended to see that the defendant was put where he belonged. Before the indictment, however, the regular judge of that district died and the commonwealth's attorney, James P. Adams was appointed judge in his stead.

So that the result of what happened was that the attorney against the defendant and for the commonwealth was placed upon the bench to try the defendant whom he had theretofore been prosecuting. It was not necessary, in order to begin the prosecution, that anything should actually be done. The bias of the prosecuting attorney against the defendant was a mental bias, and it seems to me highly improper that one who had such bias should be allowed to sit in judgment upon the trial of the case which involved the life or liberty of the defendant whom the judge had theretofore prosecuted. It will not be disputed, of course, that the defendant was entitled to a fair and impartial trial, and, in order that he might have this, it was necessary that he should have an unbaised judge to preside upon the trial of the case. The defendant was entitled to have a judge preside upon the trial of his case who had not expressed an opinion that he was guilty of the charge against him. If the judge who presided upon the trial in this case said what is charged in the affidavit there can be no doubt that he had made up his mind as prosecuting attorney that Beach Hargis was guilty of murder, and that he intended to follow him up until he was convicted; and if we analyze the language used and give to it the meaning which those who use it ordinarily intend, there can be no doubt of the soundness of this conclusion. "I have camped upon his father's trail, and will camp upon his."

The expression comes from the frontier. To camp upon one's trail is to follow him up day by day and when nightfall comes the pursuer camps upon the trail of the pursued, so that he can resume his pursuit when morning comes. The Indian camps upon the trail of the white man he is following to kill or de-

spoil; the hunter camps upon the trail of the game whose life he covets; and the revengeful man camps upon the trail of the enemy he desires to punish. The expression has a sinister sound, and augurs ill for the object of it. It means unremitting pursuit until the purpose of the pursuit is accomplished, and this is what the prosecuting attorney meant when he used the language charged against him. He intended to prosecute Beach Hargis until he was convicted, for that is what is meant by putting him where he belonged. The prosecuting attorney meant that Beach Hargis was guilty of murder, and that he intended to put him either upon the gallows or within the walls of the penitentiary. I do not believe that there can be two opinions as to the meaning of the language used, and its use showed a mental status which disqualified the speaker from occupying the position of a judge in the very case of which he was speaking. The statute (section 968, Ky. St. [Russell's St. sec. 2824]) requires the presiding judge to retire and give place to a special judge "if either party shall file with the clerk of the court his affidavit that the judge will not afford him a fair and impartial trial, or will not impartially decide an application for a change of venue." This court, in construing this statute, has uniformly required the affidavit to state the facts which show why the judge will not afford the party filing the affidavit a fair and impartial trial. This I think was done in this case by the affidavit under consideration.

I do not mean to reflect in any way upon the character or general fairness of the learned judge whose conduct is under discussion. On the contrary, it gives me great pleasure to say of him that I believe him to be an upright, honest, and learned magistrate, whose

record as a judge entitles him to the confidence of all. I do not believe he was conscious of being biased against the defendant; but, on the contrary, he was of opinion that, when he left the position of prosecuting attorney and took a seat upon the bench as judge, he could afford the defendant a fair and impartial trial. The rights of the defendant, however, do not turn upon the private belief of the judge as to his own fairness; the right to another judge turns under the statute upon the question whether the facts stated show that the judge cannot properly preside. I cannot believe that any man who has been advocate in a litigation can afterwards properly preside as judge in that litigation. The commonwealth's attorney is the advocate employed by the state in a given territory to prosecute crime, and he is paid a salary for so doing. As soon as homicide is committed in his district, as said before, it is necessary and proper that he should at once take charge of it and do all that the interests of the commonwealth demand with reference to it. This makes him literally an attorney in the case and gives to his mind such a bent or direction with reference to it as seems to me renders it improper that he should afterwards be judge of the matter. It is altogether irrelevant whether or not the judge was conscious of being biased; the bias of mind of which we are not conscious is more dangerous than that of which we are conscious. If we have cause to suspect that our mind is prejudiced against one with whom we have to deal, we may battle against it and overcome it and perhaps do him justice; but, if we are unconscious of the bias we have, then our prejudices robe themselves in the garments of truth, and we mistake them for truth, and are unable to resist their influence.

Upon the trial of the case the defendant offered to prove by James Isom that about two hours before the killing the witness met James Hargis, who said to him that he would kill his son, Beach, before night, and that he was done with him forever.  This evidence was excluded, presumably upon the ground that this threat had not been communicated to the defendant, Beach Hargis; but it is admitted in the opinion that it was competent for the purpose of showing the frame of mind of James Hargis at the time of the killing.  The opinion then holds that, while it was error on the part of the trial court to exclude this evidence, it was not prejudicial to the substantial rights of the defendant.  It seems to me that this conclusion is erroneous.  I cannot agree that it is the province of the court to weigh this proposed evidence and say that it was not prejudicial to the defendant to exclude it.

On the contrary, it seems to me, if true, to be most important to the interest of the defendant.  The defendant showed by his mother and his grandmother that his father on several occasions prior to the killing had beaten him in a cruel manner, from the effect of which he had been confined to his bed for several days after the occasion, and he offered to show by these ladies that the father threatened to kill his son while he was beating him, and would have killed him but for the fact that he was prevented from so doing.  The court excluded the testimony that the father had threatened to kill his son, and that he would have killed him but for the interference of outside parties; and of this ruling the defendant also complains.  I think this evidence was competent.  The father was beating his son, presumably, to reform him, and the average juror would be of the opinion that, although

the son was of age, yet he should not resist the exercise of parental authority when administered for his own good.   Now, when the father approached Beach in the store, upon the fatal occasion when the killing took place, and began to chastise him as he testifies, it was very important for him to know whether the father was simply intending to chastise him, or whether he intended to make an assault upon his life; and, if upon other occasions when he had begun to chastise the boy he had to be restrained by outside parties from murdering him, then Beach had a right to think that his life was in danger on the occasion of the killing when the father commenced to beat him. A boy would not be justified in killing his father simply because the parent was proceeding to administer rational corporal punishment for the good of the son; but if the son knows that the father is a savage, vindictive man, utterly without pity or remorse, and liable, under the influence of passion, to imitate the crime of Ivan the Terrible by killing his own child, then the son had a right to treat him, not as a parent correcting errors, but as a savage foe making a murderous assault.

The jury could not understand the peril in which Beach Hargis stood without knowing all that had gone before.   If the defendant was to be justified at all, he was to find his justification in the savage cruelty of the conduct of his father towards him in the past, and he had a right to have the jury view the killing for which he was tried with this evidence before them in order that they might truly estimate the danger within whose pale he stood at the time of the homicide. James Hargis is shown in this record to have been a savage, cruel man; that he had a high vindictive temper, and allowed neither fear nor remorse nor pity to

come between him and the objects of his passionate resentment. The frame of mind of the father shown by the excluded evidence warranted the boy in shooting in defense of his life, when, perhaps, he would not have been justified if the father had been in a different frame of mind. I think the jury should have had this evidence and weighed it along with the other testimony, and I am of opinion that it was highly prejudicial to the interest of the accused to exclude it. James Hargis was a man of violence and blood. He had established in the county of Breathitt a reign of terror, under the influence of which the law was paralyzed and its ministers overrun. He is pictured as a man of gigantic frame, savage temper, and indomitable courage. He had surrounded himself with armed mercenaries, whose minds he inflamed with drink, and who seemed willing to do his bidding even to the point of assassinating his enemies without fear of the consequence of their crimes and without remorse or pity for the result. He had not only broken down the law and terrorized its officers, but he had made the temple of justice itself the rendezvous for assassins who, sheltering behind its walls, reddened its portals with the blood of its votaries. He literally ingrafted upon the civilization of the twentieth century the savagery of the fifth, and introduced into a community of law and order the merciless ferocity of the middle ages.

I am of opinion that the character of this man should have been fully presented to the jury, and especially as the case had been transferred by a change of venue to a county where, perhaps, he was not so well known as in Breathitt. To shoot one's father seems almost an inexcusable crime, and is so considered by the average man. If it is to be justi-

fied at all, it must be justified by showing a very extraordinary occasion. Beach Hargis knew his father, knew his savage and ferocious temper, knew his pitiless heart, and his gigantic strength; and, so knowing, he had a right to presume that his life was in danger, when, if his father had been of a different temperament, he would not have been justified in such a conclusion.

I do not believe that this defendant has had a fair and impartial trial. I believe that the judge who presided in the case was disqualified for the reasons above given, and that the error pointed out in regard to the refusal to admit the testimony of Isom, Mrs. Hargis and her mother was so prejudicial to to the defendant's interest as to warrant a reversal of the case.

For these reasons, I am constrained to dissent from the opinion of a majority of the court.

. NUNN, C. J. I concur in the dissenting opinion for two reasons only: First, the circuit court judge should have vacated the bench upon the filing of the affidavit; and the other is for the rejection of Isom's testimony. Isom's testimony not only showed the state of mind of Judge Hargis at the time of the conflict, but it would have tended to corroborate the defendant's theory that his father made the first assault. The affidavit filed to cause the circuit court judge to vacate the bench contained only two matters worthy of notice, one of which is mentioned in the dissenting opinion, and the other is a statement to the effect that the judge was personally prejudicial and hostile to defendant, either of which should have caused him to vacate the bench.

I concur in all that is said in the dissenting opinion on the two questions referred to, but disapprove of the remainder.