## McFerrin v. Commonwealth.

(Decided January 20, 1925.)

### Appeal from Kenton Circuit Court.

1. Criminal Law—Change of Venue should be Granted on Reasonable Showing that Defendant Cannot have Fair Trial, though Matter Largely Within Court's Discretion.—Though change of venue should be granted where there are reasonable grounds for believing defendant cannot have fair trial in county where offense is committed, court has broad discretion, and its action will not be interfered with, unless there is an abuse of discretion.

2. Criminal Law—Denial of Change of Venue Held Not Error, in View of Evidence Tending to Show Fair and Impartial Trial Could be Had.—Denial of change of venue because fair and impartial trial could not be had held not error, in view of evidence tending to show that fair trial could be had where prosecution brought.

3. Criminal Law—No Issues Except those Presented should be Instructed Upon.—No issues except those presented should be instructed upon.

4. Homicide—Evidence Held to Warrant Instruction on Law of Wilful Murder.—Evidence tending to show defendant had come to house, where his daughter, the deceased, lived, with intent to kill her and another, held to warrant instruction on law of wilful murder.

5. Homicide—Evidence Held Not to Necessitate Instruction on Involuntary Manslaughter.—Evidence that defendant had had some difficulty with woman with whom his daughter had been living, and that he had come to her home, armed, with intent to kill her and either kill or take away his daughter, and that after firing shot at woman and missing her he killed his daughter, though he claimed accidentally, when she grasped his pistol, held not to require instruction on law of involuntary manslaughter.

6. Homicide—Evidence of Immoral Conduct of defendant Held Not Erroneously Admitted on Issue of His Purpose in Leaving House Alleged by Him to be of Ill-Repute.—Evidence of prior immoral conduct of defendant held not erroneously admitted for purpose of showing that he left house where murder was committed, not

because of immoral conduct of woman in charge, but rather because of prejudice and hatred.

NORTHCUTT & NORTHCUTT for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Sampson—Affirming.

Appellant, William H. McFerrin, was convicted in the Kenton circuit court of the willful murder of his fourteen-year old daughter, Minnie, and his punishment fixed at life imprisonment. He is the prosecutor of this appeal.

As grounds for reversal of the judgment he assigns (1) the failure of the trial court to sustain his motion for change of venue; and (2) failure of the court to give the jury an instruction upon the law of involuntary manslaughter; (3) instruction No. 2 presenting voluntary manslaughter was erroneous in failing to present the law in such cases when based upon the reckless and grossly careless handling of a pistol; (4) the court erred in permitting Sallie Padden, one of the prosecuting witnesses, to testify over appellant's objection concerning appellant's relation with Mrs. McWilliams and an unnamed girl some six or seven years prior to the homicide. We will consider these alleged errors in the order in which they are stated.

Appellant McFerrin filed a petition and motion for change of venue in which it is alleged that in the "vicinity where the crime is charged to have been committed there are in general circulation four (4) daily newspapers; that some or all of said newspapers go into practically every home in the city of Covington and Kenton and Campbell counties; that immediately following the occurrence of the alleged crime each of the said papers, and especially the Cincinnati Times Star and the Cincinnati and Kentucky Post, carried glaring headlines of the commission of the alleged offense, photographs of this petitioner, photographs of the place where the affair was committed, and of the revolver with which it was charged to have been committed, and that through the medium of said newspapers the said alleged offense, because of the reported unusual and wanton nature of same as charged and described in said newspapers aforesaid, was given

very great and unusual publicity; that said newspaper articles were of a highly inflammatory nature, charged your petitioner in unqualified terms of having murdered his daughter, and set out the details of the commission of said offense in lurid, revolting and highly prejudicial manner. . . . The daily newspapers, as aforesaid, created and aroused in the minds of the persons in Kenton and Campbell counties a deep-rooted conviction that the petitioner was and is guilty as charged in said newspapers, of the cold-blooded and deliberate murder of his infant daughter.''

With the petition was filed copies of certain newspapers showing large headlines and detailed stories of the homicide. Six or seven affidavits were filed in support of the petition for change of venue, which, in substance, states that "the affiants verily believe the statement of the petition for change of venue to be true, and further believe that the defendant William H. McFerrin cannot obtain a fair and impartial trial in either of said counties.''

1. The Commonwealth resisted the motion and called George E. Phillips, a practicing attorney of Covington, as a witness, who, in substance, testified he was acquainted throughout the city of Covington, Kenton county, and that he knew of no reason why appellant McFerrin could not have a fair and impartial trial in that city and county. He was asked:

"Q. Have you heard any indignation expressed on the part of the citizens of this community with reference to change of venue for defendant William McFerrin? A. No, sir. Q. Have you heard any prejudice expressed by citizens generally as to defendant William McFannin? A. No, I have not.''

The Commonwealth then called Birt J. King, attorney at law and magistrate in the city of Covington, also Emile Rivard, attorney at law, city of Covington; Ben A. Adams, real estate and insurance business, city of Covington; Dr. J. T. Wallingford, Covington; W. N. Hind, master commissioner of the Kenton circuit court, Covington; Peter P. Thiel, sheriff of Kenton county; J. Mason Howk, commissioner of public safety, city of Covington; Thomas Donnelly, mayor of the city of Covington, and John W. Middedorf, county clerk of Kenton county, all of whom stated in substance that they were well ac-

quainted with the people of Kenton county, and that they had mixed and mingled with them since the homicide charged in the indictment and are acquainted with the state of public mind in that county and that they knew of no reason why appellant could not get a fair and impartial trial in that county; that they have heard no expression of prejudice or indignation against appellant.

The witnesses called by the Commonwealth being public officials had a better opportunity to be acquainted with public sentiment in the county than those called by appellant who were private citizens. It would seem, therefore, that the trial court did not err in overruling appellant's motion and petition for change of venue, and putting him upon trial in Kenton county.

Where the evidence shows there are reasonable grounds for believing that the defendant cannot have a fair trial in the county where the offense is committed, it is the duty of the court to grant a change of venue. Bowman v. Commonwealth, 96 Ky. 8. However, the trial court has a broad discretion in granting or refusing a change of venue and his action will not be interfered with unless this court is satisfied that the lower court abused its discretion. Hargis v. Commonwealth, 135 Ky. 578.

We think the weight of the evidence on the hearing for change of venue tended to show that appellant McFerrin could have a fair and impartial trial in the courts of Kenton county.

2. Neither can we concur in appellant's contention that the trial court committed reversible error in failing to give an instruction upon the law of involuntary manslaughter. The instructions of the court must necessarily follow the pleadings and the proof. No issue except those thus presented should be instructed upon.

To determine this question it will be necessary to briefly recite the facts and contentions of the Commonwealth and appellant.

Minnie McFerrin was shot and killed on September 21, 1923, by appellant William H. McFerrin, her father. This is admitted. He says it was an accident. The Commonwealth insists that the proof shows that it was done with malice. He was a man past fifty. He had two children. His wife had died some years before and he turned the children over to one McWilliams, who brought them to Covington, where he obtained board for them and himself at the home of Mrs. Sallie Padden. She had in the

house several roomers and tenants. He remained there with the children for some time, paying their board. Once or twice a man known as ''Uncle Bill'' came to visit Mc-Williams and the children. He only stayed a short time. When McWilliams married and moved away Mrs. Padden learned for the first time that he was not the father of the children and that the man known as ''Uncle Bill'' was in fact their father and that his name was William H. McFerrin, the appellant. The older daughter then wrote to her father at some place in Ohio and he came to Mrs. Padden's and remained there for some time. At first he paid the board of himself and children with reasonable regularity. Later he paid part of the board. He finally became discontented and declared he was going to take the children and leave, and was disagreeable. Part of the time he was drinking. After some disturbance he left the Padden home to live elsewhere. He wanted to take the children with him but they did not want to go, and this angered him. He returned to the Padden home several times for the purpose of inducing the children to go with him. Just where he was going to take them is not shown. On Wednesday or Thursday before the homicide on Friday he appeared at the window in front of the Padden home and called for Minnie, his daughter. When she appeared they had a rather lengthy conversation in which he insisted upon her going with him and told her he was going to take her if he had to do so with blood. While he was talking to her he seemed to be in a bad humor and was fumbling with something in his pocket. She told him she would not go with him; that Mrs. Padden had given her and her sister a home and had taken good care of them and they wanted to remain. When he insisted on them going the daughter told him that if he took them that he could not keep them because she would tell about his intimate relations with certain women and about his conduct in coming to her room on a certain occasion. The next day appellant went across the river to Cincinnati and bought a pistol with a box of cartridges. He drank some whiskey and some Jamaica ginger and went from place to place about Covington, and that night he slept in an automobile on the street. On Friday he visited several different places. Finally in the afternoon of that day he went to the Padden home, entering by the side door. At that time Mrs. Padden was standing by a table in the kitchen and Minnie was sitting on the floor taking things out of the ice box and handing

them to Mrs. Padden who was placing them on a table. When Mrs. Padden saw appellant coming she was frightened and ran into the bedroom. He asked Minnie for Mrs. Padden, whereupon Minnie called "Mother, papa wants to speak to you." At that Mrs. Padden came back in the room and sat down in a chair without saying a word. She and appellant were not on good terms. Appellant began to talk to her, saying in substance that he had told her the truth when he had said on a previous occasion that he was going to take the children; to which she answered that she always told the truth but that she did not go about boasting of it, and started to arise from the chair. As she did so, McFerrin, who was then standing near the table, drew a pistol and fired at Mrs. Padden, the bullet striking the wall near her head, and she ran from the room. Minnie was yet sitting on the floor. What happened in the room after that is not known except from the evidence of appellant. He says he had ceased firing and did not intend to shoot again; that Mrs. Padden was gone and that she was the one whom he sought. That he was standing there with the pistol in his hand and that his daughter, Minnie, grabbed the pistol and in trying to take it out of his hand at a time when he was willing to surrender it, his finger being still on the trigger, caused it to be discharged, the bullet striking the girl in the head, back of the ear, causing her instant death. She fell with her head under the table and her feet extending towards the ice box. In the meantime Mrs. Padden ran out of the bedroom, around the house. The shot which killed Minnie was fired, according to the witnesses, about a minute after the first shot was fired. In such a situation a minute is a long time. No one heard a word spoken in the room after the firing of the first shot and, after Mrs. Padden fled. Several people testified about the conversation had in that room up to the time of the firing of the first shot. Immediately after the firing of the second shot appellant walked out of the room and went upstairs, where he met two or more women, occupants of the house, to whom he said in substance, "I have killed one of them and if I could get Sallie Padden I would be willing to go to the graveyard." He still had the pistol in his hand. He then came down and waited on the outside of the house, where the officers later arrested him. On the way to the police station he said, in substance, to the officials that he had killed one of them and that he was sorry he did not get to kill Sallie Padden and that

he guessed it meant his neck.   There is little conflict in the evidence about material matters.

As the Commonwealth's theory of the case attributed to appellant malice in the killing of his daughter, we think the court properly gave an instruction upon the law of wilful murder.   The facts and circumstances surrounding the killing were sufficient to warrant the jury in concluding that the homicide was the result of a preconceived plan on the part of appellant.   He admits he bought the pistol and cartridges for the purpose of taking his children from the Padden home, and in substance admits he went to the Padden home for the purpose of killing Mrs. Padden, but he says he did not intend to harm his daughter.   What he said immediately after the killing and while he yet had the pistol in his hand, indicated he intended to kill both his daughter and Mrs. Padden.   At least, the jury, if it believed the evidence of the witnesses who testified to what he said to them immediately after the firing of the fatal shot, was forced to conclude that appellant had previously made up his mind to kill not only Mrs. Padden but his daughter Minnie.

There is no evidence for either the Commonwealth or defendant tending to show that the daughter Minnie, and the father were in any difficulty, or that she did anything at the time or immediately before the firing of the fatal shot to provoke him or to arouse his passion beyond control so as to make the homicide anything less than murder, if the fatal shot was intentionally fired.   However, the court gave an instruction upon the law of manslaughter.   It did not give one upon the law of involuntary manslaughter, and this is one of appellant's chief grounds of complaint.   If he had relied upon involuntary manslaughter, or if any of the facts proven had tended to establish the crime of involuntary manslaughter, it would then have been the duty of the trial court to have instructed the jury upon the law in such case.   The evidence adduced by the Commonwealth to prove the charge of murder does not in any measure tend to prove the crime of involuntary manslaughter.   The appellant was present at the time of the firing of the shot and undertook to tell at his trial just how it happened.   According to his explanation it was an accident.   He says he was not intending to fire another shot; that Mrs. Padden had gone and that she was the one he was after; that he had not stepped out of his tracks; that the second shot was caused by the daughter grabbing the pistol at a

time when he had his finger on the trigger; and he had the best of feeling towards his daughter and that he did not intend to harm her, and that but for her unexpectedly grabbing the pistol it would not have been discharged and she would not have been killed. If he stated the facts then he was entitled to an acquittal. That was his defense and his evidence strongly supported it. There is no evidence tending to show the shooting occurred in any way except accidentally, as claimed by appellant Mc-Ferrin, or with malice as claimed by the Commonwealth. The court presented appellant's theory to the jury by instruction No. 5, which reads:

"If you believe from the evidence that after defendant had fired the shot at Mrs. Padden, the decedent, Minnie McFerrin, took hold of the pistol and said pistol was accidentally discharged by reason of the act of said decedent in taking hold of same and not by any act of defendant McFerrin and without any intention upon his part of discharging same and that decedent Minnie McFerrin was killed in said manner, then you will find defendant not guilty because the killing under such circumstances would be accidental."

The court also instructed upon the law which governs in cases where the slayer is of unsound mind at the time of the homicide. Other instructions with those mentioned presented the whole law of the case. Appellant was not entitled under any theory of the case, supported by evidence, to an instruction upon involuntary manslaughter, or to one based upon the reckless and grossly careless handling of a pistol.

Appellant's last contention is that the court allowed Mrs. Padden to give evidence concerning his illicit connection with a woman some years before the homicide, and to tell of the conversation between appellant and his daughter a short time before the homicide wherein the daughter told her father what she knew about his connection with another woman and his improper conduct towards the daughter. These were mere scraps of evidence offered in explanation of the charge made by appellant that Mrs. Padden was keeping a house of ill-fame, and to show that he himself did not leave the Padden home because of any immoral conduct there but rather because of his deep-seated malice and hatred of Mrs.

Padden. The evidence was not improper, under the circumstances, and could not have prejudiced the substantial rights of appellant.

For the reasons indicated the judgment is affirmed.

Judgment affirmed.